1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL LEE FURNESS, | ) 1:03cv5270 AWI DLB HC |
| | ) |
| | ) |
| Petitioner, | ) FINDINGS AND RECOMMENDATION |
| | ) REGARDING AMENDED PETITION FOR |
| | ) WRIT OF HABEAS CORPUS |
| v. | ) |
| | ) (Document 17) |
| GWENDOLYN MITCHELL, Warden, | ) |
| | ) |
| | ) |
| Respondent. | ) |
| | ) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### PROCEDURAL HISTORY[1]

On March 12, 1996, a jury convicted Petitioner of (1) second degree murder, in violation of California Penal Code section 187(a); and (2) willful cruelty to a child, in violation of California Penal Code section 273a(1).[2]  On May 10, 1996, Petitioner was sentenced to a term of 15 years to life in prison.

---

[1] This information is derived from Petitioner's amended petition for writ of habeas corpus and Respondent's answer to the petition.

[2] Petitioner was tried with co-defendant Kenneth Glenn Williams.

1

1    On October 24, 1997, Petitioner filed her appeal in the Fifth District Court of Appeal.  In

2  December 1998, Petitioner filed a petition for writ of habeas corpus in the same court.  On

3  September 28, 2000, the court affirmed her conviction and denied the petition.

4    On October 13, 2000, Petitioner filed a petition for rehearing in the Fifth District Court of

5  Appeal.  The court denied the petition on October 18, 2000.

6    On November 8, 2000, Petitioner filed a petition for review in the California Supreme

7  Court.  On January 17, 2001, the court denied the petition.

8    On January 22, 2002, Petitioner filed a petition for writ of habeas corpus in this Court,

9  case number CV F 02 5109 AWI SMS HC.  After Respondent filed a motion to dismiss the

10  petition for failure to exhaust administrative remedies, Plaintiff filed a motion to withdraw the

11  petition without prejudice on July 9, 2002.  On July 24, 2002, Petitioner filed her opposition to

12  Respondent's motion to dismiss.  On July 30, 2002, the Court granted her request and dismissed

13  the petition without prejudice.

14    On October 31, 2002, Petitioner filed a petition for writ of habeas corpus in the Kern

15  County Superior Court.  On November 7, 2002, the court denied the petition.

16    Petitioner filed a petition for writ of habeas corpus in the Fifth District Court of Appeal

17  on November 22, 2002.  The court denied the petition on December 5, 2002.

18    On January 2, 2003, Petitioner filed a petition for review in the California Supreme

19  Court.  The court denied the petition on February 11, 2003.

20    Petitioner filed the instant action on February 21, 2003, in the Sacramento Division of the

21  United States District Court for the Eastern District of California.  The action was transferred to

22  this Court on March 6, 2003.  After Respondent filed a motion to dismiss the petition for failure

23  to exhaust, Petitioner filed an amended petition on December 16, 2003, alleging a claim of

24  ineffective assistance of appellate counsel.

25    Respondent filed its answer on August 27, 2004.

26    Petitioner filed her traverse on October 6, 2004.

27

28

1    <u>STATEMENT OF FACTS</u>[3]

2    *The Death of the Child*

3         In late April 1995, Petitioner and Kenneth Glenn Williams were unemployed and without

4    shelter.  Donnie and Sandra Garner let Petitioner and Williams and their three children move into

5    a bedroom of their small house in Tehachapi.  Sandra and Donnie had three children; Sandra and

6    Williams are cousins.  Petitioner and Williams and their children all slept in the single bedroom,

7    which was approximately 10 feet by 10 feet.

8         Petitioner and Williams' youngest child, Kristin, was about eight months old.  Petitioner

9    obtained a playpen to use as a crib for Kristin, and the playpen was set up next to the double bed

10   in Petitioner and Williams' bedroom.

11        During most of the week preceding and including May 28, 1995, Sandra Garner stayed in

12   Bakersfield to be near her mother, who had suffered a heart attack.  On the evening of May 28,

13   Petitioner and Williams ran an errand at approximately 10:30 p.m.  They asked Donnie Garner,

14   who had been drinking beer all evening, to watch their sleeping children while they were gone.

15   He agreed and asked Petitioner and Williams to bring him back additional beer.

16        At about 11 o'clock, Donnie tried to call Sandra at the hospital in Bakersfield.  She was

17   not there.  He heard the radio playing in Petitioner and Williams' bedroom and went in to turn it

18   off.  He observed Kristin was completed covered by a doubled-over sleeping bag.  When he

19   uncovered Kristin, he saw she was sweaty and had a two-inch wide piece of masking tape across

20   her mouth.  Donnie removed the tape.  He gave her a bottle, of which she drank little.  Kristin fell

21   asleep.

22        Donnie than called Sandra at the home of a relative in Bakersfield.  He was upset and

23   crying as he told Sandra what had happened.  Sandra told Donnie she would be home the next

24   day and they could address the matter at that time.

25        Petitioner and Williams returned home about midnight.  They brought Donnie beer.

26   Though he sat talking with Williams for about an hour while he drank his beer, Donnie did not

27   _____

28        [3] This statement of facts is taken from the September 28, 2000, opinion of the Fifth District Court of
     Appeal.

3

mention the condition in which he had found Kristin.  About 1 a.m., Petitioner and Williams

went to bed.  Donnie later fell asleep in a chair in the living room.

The next morning about 9 a.m., Petitioner shook Williams awake, saying that "the baby"

was not breathing.  Williams tried to administer CPR.  When that failed, he ran with Kristin to a

hospital about half a block from the Garners' home.  Petitioner followed, crying and screaming.

Kristin was pronounced dead by the emergency room physician.

*The Autopsy*

No systematic attempt was made by the emergency room staff or by the coroner's

pathologist to determine the time of Kristin's death.  The emergency room physician noted that

the body was room temperature and showed signs of having been dead for one to four hours.  An

emergency room nurse noticed some abrasions on Kristin's cheeks.  In response to the nurse's

questions, Williams said Kristin had fallen recently.

Kristin's body was received at the coroner's office on the day of her death and the

pathologist briefly examined the body.  The pathologist noted disfiguration of the skin on

Kristin's face, around her mouth and the base of her nose.  There were two distinct rectangular

patterns, consistent with tape having been applied across her face on two occasions.  An autopsy

was conducted the next day.

The pathologist concluded Kristin suffocated due to the presence of tape across her

airways.  The autopsy also revealed relatively fresh hemorrhaging across the child's entire

forehead, with bruising and swelling of her brain.  Although the pathologist initially concluded

this injury had not been a cause of death, he changed his opinion shortly before trial and testified

the brain injury was a "contributing" cause of death.  He said the swelling of the brain "in and of

[itself] could be fatal."  He reiterated, however, that the "immediate cause of death" was

suffocation.  On cross-examination, the pathologist said the swelling was not sufficient in this

case to be fatal "in and of itself."

At trial, various medical experts testified that, based on the available information, death

could have occurred anywhere from one to 10 hours before Kristin was presented at the hospital.

*The Evidence Inculpating Petitioner*

In October of 1994, when Kristin was about a month old, Petitioner called her sister, Francine Iverson, to ask if Iverson could take care of Petitioner's children "for a while." Petitioner said she had no money, no home and no food for the children. The children were driving her crazy, she said, and she wanted to commit suicide. Iverson took the children and kept them until Petitioner retrieved them in late January of 1995.

In late February 1995, another sister called Iverson to report that Petitioner's two youngest children, Toni and Kristin, needed medical attention. Iverson again picked up the children. She saw that Kristin was listless and appeared to have multiple bruises. Kristin was dirty and smelled badly. Iverson took the children to the sheriff's department and then to the hospital. After the children were washed and fed, a physician examined them; he discovered no signs either child had been abused and observed no bruises on Kristin. Petitioner retrieved the children from Iverson prior to the incidents involved in the present case.

After Petitioner, Williams and the children moved in to the Garners' home, Sandra Garner observed that Petitioner was not attentive to Kristin. When the baby cried, Petitioner "would just say she was a brat and she didn't like listening to her cry." In response to Sandra's inquiries about the situation, Petitioner "said she didn't want her, and- she didn't want her because she was a fucking brat."

During this same period, Jeff Dyess, who is Sandra Garner's brother and the husband of one of Petitioner's sisters, was driving Petitioner to the welfare department. While talking to Dyess about the prospects of "get[ting] on her feet and tak[ing] care of the kids," Petitioner said she wished Kristin and Toni were dead.

About a week before Kristin's death, Petitioner asked a neighbor for tape. When the neighbor asked what kind of tape she needed, Petitioner replied, "I just need tape to tape the child's mouth shut because I'm tired of listening to her cry." Petitioner "seemed a little stressed" to the neighbor; she complained the baby cried all the time, but the neighbor "never experienced that." The neighbor did not give Petitioner tape.

When sheriff's deputies searched the Garners' house two days after Kristin's death, in Petitioner and Williams' bedroom they found two strips of masking tape with skin residue attached, one strip with specks of blood on it, and 10 other pieces hanging from the wall above the crib.  Most of the strips were about the same size and matched the markings on Kristin's face.

Donnie Garner and Dyess had seen Kristin frequently during her time in the Garners' home, and Dyess often held and played with Kristin.  About four days before Kristin's death, Dyess noticed Kristin had two black eyes and a knot on her head.  Petitioner and Williams said she had fallen from a swing after her brother struck her with a toy.  After that day, Kristen was no longer brought out from Petitioner and Williams' bedroom.  Petitioner on one occasion blocked the door to the bedroom when Dyess tried to go in to see Kristin.

Petitioner told a deputy sheriff at the emergency room that she had fed Kristin at about 8:30 the evening before and had checked on her before Petitioner herself went to bed about 11:30 p.m.  She also told an emergency room nurse she had seen Kristin alive about 11 o'clock the night before.

*The Evidence Inculpating Williams*

The evidence showed that Williams shared the same small bedroom with Petitioner, Kristin and the other two children.  He frequently played with Kristin, and by all accounts interacted with her in a loving and appropriate way.

When an emergency room nurse asked Petitioner and Williams about the abrasions on Kristin's face the morning of her death, Williams told the nurse the abrasions resulted from a fall from a swing.

Neither Williams nor Petitioner testified at trial.  The court ruled that Petitioner's extrajudicial statements were admissible against her, but not against Williams.  The court instructed the jury accordingly.[4]

---

[4] The Fifth District Court of Appeal reversed Williams' conviction for second degree murder based on the trial court's failure to instruct the jury on aiding and abetting involuntary manslaughter and instructing the jury that it was not required to find Williams guilty of the same offense as Petitioner.

1

DISCUSSION

2    A.    Jurisdiction

3          Relief by way of a petition for writ of habeas corpus extends to a person in custody

4    pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

5    or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

6    529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that she suffered

7    violations of her rights as guaranteed by the U.S. Constitution.  The challenged conviction arises

8    out of the Kern County Superior Court, which is located within the jurisdiction of this Court.  28

9    U.S.C. § 2254(a); 2241(d).

10         On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

11   of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

12   enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), cert. denied, 522 U.S.

13   1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting

14   Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), cert. denied, 520 U.S. 1107, 117 S.Ct.

15   1114 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

16   (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

17   petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

18   B.    Standard of Review

19         This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

20   custody pursuant to the judgment of a State court only on the ground that he is in custody in

21   violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

22         The AEDPA altered the standard of review that a federal habeas court must apply with

23   respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.

24   Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

25   will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

26   to, or involved an unreasonable application of, clearly established Federal law, as determined by

27   the Supreme Court of the United States;" or "resulted in a decision that was based on an

28   unreasonable determination of the facts in light of the evidence presented in the State Court

7

1  proceeding." 28 U.S.C. § 2254(d); <u>Lockyer v. Andrade</u>,123 S.Ct.1166 (2003) (disapproving of

2  the Ninth Circuit's approach in <u>Van Tran v. Lindsey</u>, 212 F.3d 1143 (9th Cir. 2000)); <u>Williams v.</u>

3  <u>Taylor</u>, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

4  because that court concludes in its independent judgment that the relevant state-court decision

5  applied clearly established federal law erroneously or incorrectly."  <u>Lockyer</u>, at 1175 (citations

6  omitted).  "Rather, that application must be objectively unreasonable."  <u>Id.</u> (citations omitted).

7       While habeas corpus relief is an important instrument to assure that individuals are

8  constitutionally protected, <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

9  (1983); <u>Harris v. Nelson</u>, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

10  criminal conviction is the primary method for a petitioner to challenge that conviction.  <u>Brecht v.</u>

11  <u>Abrahamson</u>, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

12  factual determinations must be presumed correct, and the federal court must accept all factual

13  findings made by the state court unless the petitioner can rebut "the presumption of correctness

14  by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); <u>Purkett v. Elem</u>, 514 U.S. 765, 115

15  S.Ct. 1769 (1995); <u>Thompson v. Keohane</u>, 516 U.S. 99, 116 S.Ct. 457 (1995); <u>Langford v. Day</u>,

16  110 F.3d 1380, 1388 (9th Cir. 1997).

17  C.    <u>Statute of Limitations</u>

18       Prior to addressing the merits of Petitioner's claim, the Court must address the statute of

19  limitations issue.  Respondent raises the statute of limitations argument in its answer to the

20  amended petition.  Petitioner argues that the statute of limitations defense has been waived.

21       *Background*

22       As previously set forth, Petitioner filed a prior petition in this Court on January 22, 2002.

23  The petition raised several claims, excluding the claim now before this Court.  The petition was

24  dismissed on July 30, 2002, pursuant to Petitioner's request and subsequent to Respondent's

25  motion to dismiss the petition as a mixed petition.

26       Petitioner then returned to state court.  On October 31, 2002, she filed a petition for writ

27  of habeas corpus in the Kern County Superior Court and alleged the ineffective assistance of

28  appellate counsel claim raised in the instant amended petition.  The petition was denied on

8

November 7, 2002.  Petitioner presented the same claim to the Fifth District Court of Appeal in a habeas petition on November 22, 2002.  The court denied the petition on December 5, 2002.  On January 2, 2003, Petitioner filed a petition for review in the California Supreme Court, presenting the same claim.  The court denied the petition on February 11, 2003.

Petitioner filed the instant petition on February 23, 2003.  She raised several claims. Respondent was ordered to respond to the petition, and on October 15, 2003, moved to dismiss the petition as a mixed petition.  On November 21, 2003, the Court issued a Report and Recommendation finding that only the ineffective assistance of appellate counsel claim was exhausted and allowing Petitioner an opportunity to withdraw the unexhausted claims.  In a footnote, the Court stated:

> In conducting this analysis the Court is not finding that the instant petition is barred by the statute of limitations as that issue was not raised by the Respondent and thus, is not before the Court.  Should petitioner move to hold the petition in abeyance, Respondent is REQUIRED to submit briefing on the statute of limitations and the applicability of the relation back doctrine.

Report and Recommendation, Nov. 21, 2003, at 6.

On December 16, 2003, Petitioner filed an amended petition that omitted the unexhausted claims.  Also on December 16, 2003, Petitioner filed a request to hold the petition in abeyance.

Respondent filed an opposition to the request on December 24, 2003, arguing that the remaining claim, although exhausted, was barred by the statute of limitations.

On January 20, 2004, the Court issued an order vacating the November 21, 2003, Report and Recommendation and denying Petitioner's request to hold the petition in abeyance.  The Court also determined that Respondent waived the statute of limitations defense by not asserting it as a defense to the petition.

On June 28, 2004, the District Court judge issue an order finding that a motion to dismiss for violation of the statute of limitations was not before the Court as Respondent had not filed a motion to dismiss based on the limitations period.  The Court ordered Respondent to answer the merits of the amended petition and stated, "[t]he court takes no position on whether such an answer could include a statute of limitations defense so long as the answer addresses the petition's merits in compliance with this order."  Order, June 28, 2004, at 6.

1    Respondent filed its answer on August 27, 2004.  Prior to addressing the merits of claim,

2    Respondent argues that the claim is barred pursuant to the statute of limitations.

3         *Waiver*

4         Given the Court's refusal to take a position on whether Respondent could assert a statute

5    of limitations defense in its answer, the Court must now decide whether, as Petitioner contends,

6    the defense has been waived.

7         In Nardi v. Stewart, 354 F.3d 1134 (9th Cir. 2004), the Ninth Circuit reviewed the district

8    court's sua sponte dismissal of a habeas petition as time-barred where the respondent failed to

9    raise the defense in its answer.  In holding that the district court erred because respondent waived

10   the defense, the court explained that "[t]here is no dispute that AEDPA's statute of limitations is

11   an affirmative defense."  Nardi, 354 F.3d at 1140 (citations omitted).  Accordingly, Federal Rules

12   of Civil Procedure 8(c) and 12(b) require that the state raise the statute of limitations in its first

13   responsive pleading to avoid waiver.  Id.  Thus, the court held that the state waives its statute of

14   limitations defense by filing a responsive pleading that fails to affirmatively set forth the defense.

15   Id., at 1141.

16        The Ninth Circuit recently reiterated and endorsed its holding in Nardi in Morrison v.

17   Mahoney, 399 F.3d 1042 (9th Cir. 2005).  In doing so, the court explained that the requirement in

18   Rule 8(c) to set forth affirmative defenses applies only to pleadings, and that a motion to dismiss

19   is not a pleading.  Morrison, 399 F.3d at 1046.

20        Accordingly, because Respondent raised the statute of limitations defense as an

21   affirmative defense in its answer, the defense has not been waived.  Morrison, 399 F.3d at 1046;

22   Nardi, 399 F.3d 1140-1141.  To the extent Petitioner argues that Respondent violated this

23   Court's August 9, 2003, Scheduling Order, her argument fails.  The Scheduling Order ordered

24   Respondent to file an answer addressing the merits of the petition within ninety days of the date

25   of service.  The Order *authorized* Respondent to file a motion to dismiss for violation of the

26   statute of limitations, in lieu of an answer, within sixty days of the date of service.  Order, Aug.

27   19, 2003, at 2.  Rather than a mandatory directive, the Court's order simply affords the option of

28

filing motions to dismiss at an earlier time to facilitate dismissal of habeas petitions on procedural grounds and avoid unnecessary briefing on the merits.

*Analysis*

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997).  The instant petition was filed on February 21, 2003, and thus, is subject to the provisions of the AEDPA.

The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal petition for writ of  habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, Section 2244, subdivision (d) reads:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In most cases, the limitation period begins running on the date the petitioner's direct review becomes final.  Here, Petitioner was convicted on March 12, 1996.  The petition for

review was denied by the California Supreme Court on January 17, 2001.[5]  Thus, direct review

would conclude on April 19, 2001, when the ninety (90) day period for seeking review in the

United States Supreme Court expired.[6]  Barefoot v. Estelle, 463 U.S. 880, 887 (1983); Bowen v.

Roe, 188 F.3d 1157, 1159 (9th Cir.1999) (concluding period of "direct review" includes the

period within which one can file a petition for a writ of certiorari in the United States Supreme

Court); Smith v. Bowersox, 159 F.3d 345, 347 (8th Cir.1998).  Petitioner would have one year

from April 19, 2001, absent applicable tolling, in which to file her federal petition for writ of

habeas corpus.  See Patterson v. Stewart, 251 F.3d 1243, 1245 (9th Cir. 2001) (holding that Rule

6(a) of the Federal Rules of Civil Procedure governs the calculation of statutory tolling

applicable to the one year limitations period.).

The next filing after conclusion of Petitioner's direct review was her first petition in this

Court, filed on January 15, 2002.[7]  As of the time of filing, 271 days of the limitations period had

elapsed.  There were no state habeas petitions filed during this time.

The statute of limitations is not tolled during the pendency of a federal habeas petition,

and the limitations period therefore expired on April 19, 2002.  Duncan v. Walker, 533 U.S. 167

(2001).  On July 9, 2002, almost three months after the limitations period expired, Petitioner filed

a request to withdraw the petition.  The Court granted the request on July 30, 2002.

The ineffective assistance of appellate counsel claim was first raised in the state court in

Petitioner's petition for writ of habeas corpus filed in the Kern County Superior Court on or

about August 7, 2002.[8]  This was almost four months after the limitations period had expired and

---

[5]Cal. R. Ct. 24(a) providing that an order of the Supreme Court denying a petition for review of a decision of a Court of Appeal becomes final when it is filed.

[6] See Sup.Ct. R. 13(1)

[7] Although the petition was filed with the Court on January 22, 2002, Petitioner signed the proof of service on January 15, 2002, and pursuant to the mailbox rule, this date is used for purposes of the AEDPA.  Houston v. Lack, 487 U.S. 266 (1988).

[8] Petitioner claimed to have mailed the petition to the Kern County Superior Court on August 7, 2002. However, the petition was not received/filed on or about that date.  Her mail records from Central California Women's Facility reflect outgoing mail to that court on August 6, 2002.  In a letter to the court dated October 5, 2002, she inquired as to the status of her petition and included a copy of the petition that she claimed to have previously sent.  The court filed the petition on October 31, 2002.  Giving Petitioner the benefit of the doubt, the

1  does not allow for tolling.  Green v. White, 223 F.3d 1001, 1003 (9th Cir.2000) (Petitioner is not

2  entitled to tolling where the limitations period has already run); see also Webster v. Moore, 199

3  F.3d 1256 (11th Cir.2000); Rendall v. Carey, 2002 WL 1346354 (N.D.Cal.2002).

4         The instant petition is therefore barred by the statute of limitations.  While Respondent

5  incorporates by reference its statue of limitations analysis set forth its opposition to Petitioner's

6  request to hold the petition in abeyance, Petitioner's traverse only addresses the waiver issue.  To

7  the extent Petitioner could have argued that equitable tolling and/or the relation back doctrine

8  should apply, those arguments were rejected in this Court's June 28, 2004, Order Adopting the

9  Report and Recommendation, the October 28, 2004, Order Denying Petitioner's Motion for

10  Reconsideration, the December 20, 2004, Order Denying Petitioner's Motion to Amend the

11  October 28, 2004, Order, the August 24, 2005, Order Denying Petitioner's Request for

12  Reconsideration, and the December 23, 2005, Order Denying Petitioner's Motion to Amend the

13  August 23, 2005, Order.  Petitioner presents no new factual and/or legal argument to warrant a

14  reexamination of these issues.

15  **RECOMMENDATION**

16         Accordingly, the Court HEREBY RECOMMENDS that the amended petition for writ of

17  habeas corpus be DISMISSED for Petitioner's failure to comply with 28 U.S.C. § 2244(d)'s one

18  year limitation period.

19         This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii,

20  United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B)

21  and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern

22  District of California.  Within thirty (30) days after being served with a copy, any party may file

23  written objections with the court and serve a copy on all parties.  Such a document should be

24  captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the

25  objections shall be served and filed within ten (10) court days (plus three days if served by mail)

26  after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant

27

28  Court will use the earlier date of August 7, 2002, in the statute of limitations analysis.

1  to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the

2  specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

3  F.2d 1153 (9th Cir. 1991).

4

5       IT IS SO ORDERED.

6  **Dated:    February 17, 2006**                    _____/s/ **Dennis L. Beck**_____
   3b142a                                        UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28